UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES OF AMERICA          25mj8140 WM

v.

CHRISTOPHER WHYTE

FILED BY_____SW_____D.C.
Mar 15, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

**Defendant.** /

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?  ☐ Yes  ☑ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ☐ Yes  ☑ No

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  ☐ Yes  ☑ No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

BY: _*Justin Chapman*_____
JUSTIN CHAPMAN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.    85778
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:   (561) 820-8711
Fax:   (561) 820-8777
Email: justin.chapman4@usdoj.gov

UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  25mj8140 WM |
| CHRISTOPHER WHYTE | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

FILED BY ___SW___ D.C.
Mar 15, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 14, 2025__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C, §113(a)(3). | Assault with a Dangerous Weapon Within U.S. Territorial Jurisdiction |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

/s/ *Gennady Julien*
*Complainant's signature*

SA Gennady Julien, FBI
*Printed name and title*

Subscribed and sworn to before me by Telephone (Face Time) per Fed. R. Crim. Pro 4(d) and 4.1.
Date: 03/15/2025

*William Matthewman*
*Judge's signature*

City and state: West Palm Beach, FL

Hon William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gennady Julien (the Affiant), been duly sworn, depose and state as follows:

1. I have been employed as a Special Agent of the FBI since 2019 and am currently assigned to Miami Division, Palm Beach County Resident Agency. While employed by the FBI, I have investigated a variety of federal criminal violations, including but not limited to; crimes against children, matters related to child pornography, bank robberies, violent incident crimes on airplanes, the high seas, and federal facilities, and federal firearms violations. Moreover, I am a federal law enforcement officer engaged in enforcing criminal laws of the United States, including 18 U.S.C. § 113(a)(3).

2. In this capacity, I have investigated violent incident crimes within federal territories or federal jurisdictional areas. These investigations have included the use of surveillance techniques, undercover activities, the interviewing of subjects and witnesses, and the planning and execution of arrest, search, and seizure warrants. I have also participated in training programs for the investigation and enforcement of violent incident crimes and federal firearms violations.

3. I am conducting an investigation involving a violent incident crime involving the use of a firearm on federal property by the individual named herein, Christopher Whyte (hereinafter "WHYTE"). I am familiar with the facts and circumstances surrounding this investigation from my own investigative efforts, as well as from information obtained from other law enforcement officers with personal knowledge of the evidence and activities described herein. Although familiar with the facts and circumstances of this investigation, I have not included each and every fact known to me about the matters set forth herein, but only those facts that I believe are necessary to establish probable cause to believe that WHYTE has violated 18 U.S.C. § 113(a)(3).

4. On March 14, 2025, Federal Bureau of Investigation (FBI) and Palm Beach Sheriff's Office (PBSO) personnel responded to the United States Army Reserve Center, a federal facility located in the Southern District of Florida at 100 North Congress Avenue, Lake Park, Florida 33404. The facility is clearly marked with a large sign on the south side of the property near the entrance to the main parking lot. The entrance to the main parking lot is contains numerous large plastic barricades typical of military and federal facilities, and a fenced in parking structure for military vehicles is visible on the north end of the property. On the entry door to the structure of the facility is a posted sign stating the carrying firearms on the premises is prohibited.

5. Upon arrival on scene, PBSO was advised that United States Army Sergeant WHYTE had exhibited a firearm and made threats in a dispute with another Army Reserve member and had fled the scene. PBSO deputies stopped WHYTE in his vehicle, a silver Honda Accord, at the Race Trac fuel station at 200 North Congress Avenue, Lake Park, Florida, immediately adjacent to the Army Reserve Center. Deputies on scene asked WHYTE if he had a firearm. WHYTE reported he had one behind the front seat of his vehicle. PBSO Deputies requested consent to recover the firearm. WHYTE provided consent to recover the weapon. PBSO recovered a Glock 23 bearing serial number BWTP760. The weapon was loaded with a magazine of thirteen 9mm rounds. The weapon did not have a round loaded in the chamber at the time of recovery.

6. PBSO notified FBI of the incident. FBI personnel responded and conducted interviews of involved parties on scene. FBI interviewed Witness 1, a U.S. Army Sergeant. Witness 1was visibly distressed and advised she was terrified and just wanted to make it home safe to her child. Witness 1was familiar with WHYTE from when WHYTE worked with the 873rd division. Witness 1 was also familiar with WHYTE because she was friends with Witness 2, another U.S. Army Sergeant. WHYTE and Witness 2 had dated on and off for a few years but had

separated when WHYTE went on deployment to Kuwait in 2024. Witness 1 knew WHYTE was upset because he and Witness 2's mutual friends appeared to side with Witness 2 following the end of their relationship.

7. On the afternoon of March 14, 2025, WHYTE initiated contact with Witness 1 on the second floor of the U.S. Army Reserve Center in an aggressive manner, stating, "You guys are fake ass hoes", referencing a perceived fraudulent social conspiracy against him. WHYTE also expressed aggression towards Witness 2 who was seated with her legs crossed. WHYTE on at least two instances walked past Witness 2 and kicked her leg out of the way, telling her to move. The dispute escalated until WHYTE raised his shirt to Witness 1, showing what appeared to be a black Glock pistol in his waistband. WHYTE gripped the weapon and began to draw the weapon up from the waistband, but did not clear the muzzle of the weapon from the waistband. As he gripped the weapon, WHYTE stated to Witness 1, "I'll air this out on you and everybody and put a bullet in this girl's head." WHYTE's dispute was overheard by other military and command personnel in the facility. Military command personnel notified law enforcement and attempted to stop WHYTE. WHYTE fled the facility.

8. FBI personnel interviewed Witness 2, who confirmed that she had been involved in an on again/off again relationship with WHYTE from approximately September 2022 through March 2024. Witness 2 and WHYTE ended their relationship when WHYTE was deployed abroad. WHYTE was angry with Witness 2 because she became sexually involved with other men while he was deployed. Witness 2 reported she left WHYTE because WHYTE had been manipulative and unfaithful. Witness 2 had not expected to see WHYTE at the Army Reserve Center on March 14, 2025, and felt nervous when she saw his vehicle was there. When WHYTE passed her as she was seated, he kicked her leg. Witness 2 thought WHYTE was trying to be humorous with this

3

act. Witness 2 did not observe WHYTE display the weapon but heard about it immediately after it occurred.

9. FBI personnel interviewed WITNESS 3, another U.S. Army Sergeant present that day. WITNESS 3 made contact with WHYTE immediately outside of the Army Reserve Center building. WITNESS 3 was made aware that WHYTE had allegedly brandished and threatened another soldier with a firearm. WITNESS 3 called 911 and notified WHYTE that law enforcement was en route and that he was required to stay on the premises. At this point, WITNESS 3 observed WHYTE step back and blade the right side of his body away, and posture. WITNESS 3 recognized from his law enforcement training and experience as a characteristic of an armed gunman. WITNESS 3 clearly observed a bulge consistent with the appendix-carry of a firearm under WHYTE's shirt. WITNESS 3 approached WHYTE, at which point WHYTE sprinted to his vehicle and fled the scene.

10. FBI personnel conducted a post-Miranda interview of WHYTE. WHYTE reported he had recently returned from deployment and had come to the Army Reserve Center to file paperwork with Veteran's Affairs for medical issues. WHYTE reported that immediately after completing the paperwork, he was stopped by a staff sergeant who asked him to meet him outside. Outside the building, the staff sergeant began asking WHYTE whether he had a weapon on the premises. WHYTE reported to the staff sergeant that he did have a weapon in his car which was parked on the premises. WHYTE was then informed by an unknown individual that law enforcement was coming to the scene at which point WHYTE left. Upon direct questioning from FBI, WHYTE denied carrying a firearm on his person in the federal facility, denied brandishing the weapon in any capacity, denied threatening to use the weapon, and denied engaging in any dispute or tense words with anyone at the Army Reserve Center. WHYTE reported law

enforcement was called due to false accusations stemming from a sexual harassment complaint with a prior lieutenant. WHYTE additionally insisted he merely walked away from the incident.

11. After making these statements, FBI personnel advised WHYTE of Title 18 United States Code 1001 and made him aware that lying to a federal agent in furtherance of a crime could be charged as a felony. Following this advisement, WHYTE reaffirmed that he did not carry a weapon on his person into the U.S. Army Reserve facility, he did not engage in any kind of verbal dispute with anyone in the facility, and that he calmly walked away from the facility after being confronted by his command. WHYTE additionally reaffirmed that he only had the firearm in the vehicle the entire time he was at the facility.

12. Based on the foregoing facts, I believe there is probable cause that CHIRSTOPHER WHYTE did knowingly commit an assault with a dangerous weapon, with intent to do bodily harm, in the federal U.S. Army Reserve Center facility, located within the territorial jurisdiction of the United States, in violation of Title 18, United States Code, Section 113(a)(3).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

/s/ Gennady Julien
Gennady Julien
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by
Telephone (Face Time) per Fed. R. Crim.
Pro 4(d) and 4.1 in West Palm Beach, Florida,
this  15th   day of March 2025.

_____
HONORABLE WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE